UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:21-cv-09682-CAS (PDx) | Date | February 13, 2023 |
|---|---|---|---|
| Title | JASON EMER V. NICOLE SPEARMAN, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Lawrence Segal | Nicole Spearman, Pro Se<br>Cynthia Gitt<br>Matthew Gardner |

**Proceedings:**     PARTIAL MOTION FOR SUMMARY JUDGMENT (Dkt. 91, filed on JANUARY 12, 2023)

## I. INTRODUCTION

On October 29, 2021, plaintiff Jason Emer filed this action against defendants Nicole Spearman ("defendant"), Armez Spearman, Carthell Sanders,[1] and Does 1 through 30 in Los Angeles County Superior Court. Dkt. 1, Exh. A. Emer alleges state law claims for (1) unpaid rent, pursuant to California Civil Code § 1951.2, as against Nicole Spearman; (2) fraud in the inducement/promissory fraud, as against Nicole Spearman; and (3) property damage, as against all defendants. Id. ¶¶ 18-46. Plaintiff's claims arise out of a lease agreement between Emer and Nicole Spearman providing that Emer would rent a fully furnished, single family home located at 737 North Fuller Avenue in Los Angeles, California (the "Fuller Property") to Nicole Spearman for a year-long period between May 2021 and May 2022. Id. ¶¶ 10-11. Emer alleges that Nicole Spearman failed to pay rent, violated other provisions in the lease agreement, and fraudulently induced Emer to rent the Fuller Property to her through misrepresentations in her rental application. Id. ¶¶ 18-46.

---

[1] On May 20, 2022, the Clerk of the Court entered default against Carthell Sanders, pursuant to Federal Rule of Civil Procedure 55(a), following his failure to respond to the complaint. Dkt. 55.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-09682-CAS (PDx) | Date | February 13, 2023 |
|---|---|---|---|
| Title | JASON EMER V. NICOLE SPEARMAN, ET AL. | | |

On December 3, 2021, Nicole Spearman filed a notice of removal, on diversity jurisdiction grounds pursuant to 18 U.S.C. § 1332, contending that she is a citizen of Illinois and Emer is a citizen of California. Dkt. 1 at 3-4.[2] On January 13, 2022, Nicole Spearman filed an answer to the complaint and asserted counterclaims against Emer, alleging violations of the Fair Housing Act, 42 U.S.C. § 3604; violation of 42 U.S.C. § 1982; and state law claims for tenant harassment, discrimination, stalking, and intentional infliction of emotional distress. Dkt. 6.[3] On June 1, 2022, Nicole Spearman filed First Amended Counterclaims, which excluded the state law claim for tenant harassment but otherwise alleged the same claims set forth in her initial counterclaims. Dkt. 57.

On January 12, 2023, plaintiff Emer filed a partial motion for summary judgment, moving for summary judgment on his first two claims for relief against defendant Nicole Spearman. Dkt. 91. On January 27, 2023, defendant, acting pro se, filed a declaration in opposition to plaintiff's partial motion for summary judgment, four days after the deadline for filing an opposition under the Local Rules. Dkt. 94 ("Spearman Decl."). On January 30, 2023, plaintiff filed a reply in support of his motion for summary judgment. Dkt. 92. Plaintiff's motion is presently before the Court.

---

[2] On December 20, 2021, the Court issued an Order to Show Cause why the action should not be dismissed for lack of subject matter jurisdiction on account of Armez Spearman and Carthell Sanders appearing to be California citizens. Dkt. 5. On January 24, 2022, Nicole Spearman filed a response stating that Armez Spearman and Carthell Sanders are citizens of Illinois and thus there is complete diversity. Dkt. 12.

[3] On that same day, Nicole Spearman filed a third-party complaint against third-party defendants Enzo Fiore, Tanner Johnson, and Lawrence Segal, alleging violations of the Fair Housing Act, 42 U.S.C. § 3604; violation of 42 U.S.C. § 1982; and state law claims for tenant harassment, discrimination, stalking, intentional infliction of emotional distress, and civil conspiracy. Dkt. 6. On June 1, 2022, Nicole Spearman filed a First Amended Third-Party Complaint, alleging all of her original claims except for the state law claim for tenant harassment. Dkt. 57. On December 1, 2022, upon Nicole Spearman's request for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a), the Court dismissed with prejudice the First Amended Third-Party Complaint. Dkt. 90. Accordingly, Fiore, Johnson, and Segal are no longer parties to this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-09682-CAS (PDx) | Date | February 13, 2023 |
|---|---|---|---|
| Title | JASON EMER V. NICOLE SPEARMAN, ET AL. | | |

On February 13, 2023, the Court held a hearing on plaintiff's partial motion for summary judgment. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.[4]

### A. The Lease Agreement

At all times relevant to his claims for relief, plaintiff Jason Emer was the owner of the Fuller Property. See Dkt. 91-2, Statement of Uncontroverted Facts ("SUF") ¶ 1. In late April or early May 2021, plaintiff's real estate agent Enzo Fiore informed plaintiff that he had been contacted by real estate agent Sheila Bargrizan on behalf of defendant Nicole Spearman. Id. ¶ 2. Bargrizan informed Fiore that defendant was interested in renting the Fuller Property. Id. At the time, defendant resided in Chicago, Illinois and worked full-time as a public school teacher employed by the Chicago public school system. Id. ¶ 3. Her nephew, Armez Spearman, connected her with Bargrizan. Id. ¶ 4. The rental application for the Fuller Property required the applicant to state whether, within the past seven years, he or she had been convicted of a felony. Within the past seven years, Armez Spearman was convicted of a felony and pleaded no contest to a felony criminal charge. Id. ¶ 39.

Defendant, through Bargrizan, submitted a rental application for the Fuller Property that included numerous untrue statements. Id. ¶¶ 5, 7. Specifically, defendant falsely asserted that she had a California driver's license and put a fake driver's license number on the rental application. Id. ¶ 7. She additionally falsely stated that she owned

---

[4] The parties assert numerous evidentiary objections to the other's evidence. See dkts. 93, 96. "In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." Capitol Records, LLC v. BlueBeat, Inc., 765 F. Supp. 2d 1198, 1200 (C.D. Cal. 2010).
   To the extent that the Court relies on objected-to evidence, it has considered and **OVERRULED** the parties' evidentiary objections. Evidence not considered by the Court is not addressed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-09682-CAS (PDx) | Date | February 13, 2023 |
|---|---|---|---|
| Title | JASON EMER V. NICOLE SPEARMAN, ET AL. | | |

or leased a Mercedes vehicle, that she was living in an apartment located on Wilshire Boulevard in Los Angeles, and that she had owned and sold real property located in Chicago. Id. ¶¶ 8, 9, 10. Although she lived and worked full time in Chicago, defendant stated on the application that she worked at a spa in Calabasas called Body Werks Rejuvenation Spa ("Body Werks") and that she earned $350,000 per year. Id. ¶¶ 11, 12. Body Werks is owned by Armez Spearman. Id. ¶ 38. In reality, defendant earned approximately $95,000 annually as a Chicago public school teacher and supplements her income by selling crafts online, which earns her approximately $10,000 annually. Id. ¶¶ 27, 29. Defendant contends that Armez Spearman would sometimes pay her in cash from Body Werks for consulting services but, in her deposition, could not recall how much cash or how often he gave it to her. Id. ¶ 28. In the rental application, defendant represented that the information contained therein was true and complete. Id. ¶ 13.

Defendant, through Bargrizan, additionally submitted numerous fabricated documents to plaintiff with her rental application. Id. ¶ 14. These included two purported ADP earnings statements which appear to have been issued by Body Werks, despite the fact that defendant never received a salary from Body Werks. Id. Defendant also submitted two purported W-2 forms appearing to be annual income statements issued by Body Werks to defendant in 2019 and 2020. Id. ¶ 15. In her deposition, defendant testified that she did not receive these ADP statements or W-2 forms from Body Werks. Id. ¶¶ 14, 15. During discovery, defendant, Armez Spearman, and Bargrizan stated that Armez Spearman completed the application on defendant's behalf, with her permission and knowledge, and provided Bargrizan with the fabricated ADP statements and W-2 forms. Id. ¶¶ 43-48.

Following receipt of defendant's rental application, plaintiff and defendant entered into a one-year lease agreement (the "Lease Agreement"), pursuant to which defendant was entitled to take possession of the Fuller Property as of May 15, 2021. Id. ¶ 20. The Lease Agreement provided that defendant would pay $14,250 in monthly rent and would also be responsible for paying for the gardener and pool maintenance. Id. ¶ 18. Further, the Lease Agreement contained provisions (a) prohibiting smoking at the Fuller Property, (b) prohibiting dogs or other pets from being kept at the Fuller Property, (c) prohibiting the changing of locks, (d) prohibiting unauthorized persons 18 years of age or older from living at the Fuller Property without those persons first completing and providing lease rental applications for plaintiff's approval, and (e) requiring defendant to maintain and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:21-cv-09682-CAS (PDx) | Date | February 13, 2023 |
|---|---|---|---|
| Title | JASON EMER V. NICOLE SPEARMAN, ET AL. | | |

pay the policy premiums for a renter's insurance policy naming plaintiff as an additional insured party. Id. ¶ 67.

### B. Use of Fuller Property Prior to Eviction

On May 15, 2021, keys to the Fuller Property were turned over to Bargrizan, who in turn gave the keys to Armez Spearman. Id. ¶ 21. That same day, Armez Spearman asked Bargrizan to explain to him how to operate certain features at the Fuller Property. Id. ¶ 58. According to plaintiff, following receipt of the keys, Armez Spearman used the Fuller Property as his primary residence for more than thirty days between May 15, 2021, and October 7, 2021. Id. ¶ 59. Plaintiff further contends that Carthell Sanders, a friend of Armez Spearman, also resided at the Fuller Property for more than thirty days during that same period. Id. ¶ 64. Neither Armez Spearman nor Sanders completed a rental application as required by the Lease Agreement. Id. ¶ 61.

When the keys to the Fuller Property were given to Bargrizan, defendant was not in Los Angeles, and she did not come to the Fuller Property until June 25, 2021, following the end of the Chicago school year. Id. ¶ 23. Defendant stated that she entered into a lease beginning in May despite not being able to travel to Los Angeles until June 25 because she wanted to "[h]ave secured housing." Id. ¶ 27. Defendant remained at the Fuller Property for approximately three to four weeks, after which she returned to Chicago. Id. ¶ 24. Defendant never returned to the Fuller Property, and her teacher preparation days for the 2021-2022 school year began on August 23, 2021. Id. ¶¶ 24, 34. Defendant did not make any rental payments for the Fuller Property. Id. ¶¶ 52-57. Rather, Armez Spearman paid the first month's rent and security deposit and the June 2021 rent. Id. Defendant never paid Armez Spearman back for the rent. Id. ¶ 57.

The parties disagree regarding why Nicole Spearman entered into the Lease Agreement. According to Emer, she entered into the Lease Agreement at least in part so that Armez Spearman could live at the residence. Id. ¶ 60. According to Nicole Spearman, she signed the lease with the full intention of living at the Fuller Property. Spearman Decl. ¶ 4. She states that she planned to commute monthly from Chicago to Los Angeles because she was serving as the lead consultant at Body Werks and planned to pay for the rent with her monthly income from this business. Id. ¶¶ 4, 6. According to Nicole Spearman, the business was ultimately not successful due to the COVID-19 pandemic. Id. ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    'O'

| Case No. | 2:21-cv-09682-CAS (PDx) | Date | February 13, 2023 |
|---|---|---|---|
| Title | JASON EMER V. NICOLE SPEARMAN, ET AL. | | |

While residing at the Fuller Property, Armez Spearman and Sanders engaged in conduct prohibited by terms in the Lease Agreement, including smoking inside and keeping dogs in the house. SUF ¶¶ 71, 73-75. Additionally, Nicole Spearman and Armez Spearman caused or allowed locks to be changed at the Fuller Property without notifying Emer. Id. ¶¶ 76, 77. And Nicole Spearman did not maintain a rental insurance policy naming Emer as an insured party over the entire lease period. Id. ¶ 80.[5] In late 2021, Emer became aware that there were dogs at the Fuller Property and that people were smoking there. Id. ¶ 82. Emer's counsel contacted Nicole Spearman and demanded that the dogs be removed from the property and that the smoking cease. Id. One week later, Armez Spearman belatedly paid $14,200 in rent for June 2021, $50 short of the required amount. Id. ¶ 83. This was the last rent payment that was made to Emer. Id. ¶ 84.

In her declaration, Nicole Spearman states that the $50 discrepancy in the June rent resulted from an inadvertent error. Spearman Decl. ¶ 13. She further states that she attempted to pay the rent for July 2021, but the wire transfer number given to her was incorrect. Id. ¶ 13. She states that she was then told by her former counsel of record to withhold rent for July 2021 because of a gas leak at the Fuller Property that resulted in uninhabitable conditions. Id. ¶ 14. She explains that "[t]o [her] knowledge, Mr. Emer made attempts to fix the gas leak but the leak was not complete before the time [she] was evicted." Id. ¶ 17. According to Nicole Spearman, Emer was unable to rent or sell the property following the eviction because the Los Angeles authorities had to do "extensive work to correct the gas leak." Id. ¶ 16.

According to Emer, the gas leak occurred entirely outside, in the backyard of the Fuller Property, and did not impact access to gas in the house. Dkt. 92 at 8. Gas company records indicate that the gas leak was capped on July 6, 2021. Id. at 7. Emer was not notified of the gas leak until one week later, on July 13, 2021. Id.

With respect to the alleged violations of lease terms unrelated to nonpayment of rent, Nicole Spearman states in her declaration that Armez Spearman and Sanders did not reside at the Fuller Property, that the dogs seen on the property did not live there, and that

---

[5] During discovery, Nicole Spearman first stated that she had never taken out a rental insurance policy naming Emer as an insured party. She later testified that she had taken out the policy but did not maintain it over the full term of the Lease Agreement. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-09682-CAS (PDx) | Date | February 13, 2023 |
|---|---|---|---|
| Title | JASON EMER V. NICOLE SPEARMAN, ET AL. | | |

she changed the locks and removed cameras installed on the property because she felt they were an invasion of privacy. Spearman Decl. ¶¶ 5, 7-12.

### C. Unlawful Detainer Action and Eviction of Nicole Spearman

On August 16, 2021, Emer's counsel served a notice to cure or quit on Nicole Spearman and the then-unknown occupants based on alleged violations of the lease unrelated to nonpayment of rent. SUF ¶ 90. Thereafter, Emer's counsel filed an unlawful detainer action against Nicole Spearman and the then-unknown occupants in Los Angeles Superior Court. Id. A default judgment for possession was entered in that action in favor of Emer when the defendants failed to respond. Id. ¶ 91. On September 20, 2021, Nicole Spearman's right to possession was terminated by court order. Id. On October 7, 2021, Nicole Spearman, Armez Spearman, and Sanders were evicted from the Fuller Property by Los Angeles County Sheriff's deputies. Id. ¶ 92.

According to Emer, he made diligent efforts to re-rent the Fuller Property after the eviction but was unable to find another tenant for the remainder of the lease term. Id. ¶ 100. The Fuller Property was eventually sold after the lease term ended in May 2022. Id. ¶ 89.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

Case 2:21-cv-09682-CAS-PD Document 98 Filed 02/13/23 Page 8 of 12 Page ID #:1554

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-09682-CAS (PDx) | Date | February 13, 2023 |
|---|---|---|---|
| Title | JASON EMER V. NICOLE SPEARMAN, ET AL. | | |

the burden of proof at trial." Celotex, 477 U.S. at 322; see Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

Plaintiff contends that summary judgment in his favor is proper with respect to his claim for unpaid rent under California Civil Code § 1951.2 and his claim for fraudulent inducement and promissory fraud. According to plaintiff, the proper damages amount to be awarded under both claims is the total unpaid rent, $148,943.50, plus prejudgment interest, plus attorneys' fees and costs not to exceed $1,000. Dkt. 91 at 21, 24.

### A. Claim Pursuant to California Civil Code § 1951.2

California Civil Code § 1951.2 provides as follows:

[I]f a lessee of real property breaches the lease and abandons the property before the end of the term or if [her] right to possession is terminated by the lessor because of a breach of the lease, the lease terminates. Upon such termination, the lessor may recover from the lessee:

(1) The worth at the time of award of the unpaid rent which had been earned at the time of termination;

(2) The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the lessee proves could have been reasonably avoided; [and]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:21-cv-09682-CAS (PDx) | Date | February 13, 2023 |
|---|---|---|---|
| Title | JASON EMER V. NICOLE SPEARMAN, ET AL. | | |

(4) Any other amount necessary to compensate the lessor for all the detriment proximately caused by the lessee's failure to perform his obligations under the lease or which in the ordinary course of things would be likely to result therefrom.

Cal. Civ. Code § 1951.2(a). Plaintiff contends that the evidence, when viewed in the light most favorable to defendant, supports judgment as a matter of law that plaintiff is entitled to all of the unpaid rent and additional costs for the full lease term. Dkt. 91 at 19-21. This includes the unpaid rent due prior to defendant's eviction ($50 for June 2021, $14,250 for July 2021, $14,250 for August 2021, and $14,250 for September 2021) plus the unpaid rent due for the remainder of the lease term ($14,250 for each month from October 2021 through April 2022 and $7,125 for the first half of May 2022), less $1,461.50 remaining from the security deposit after it was applied toward property damage. Id. It additionally includes $730 in unpaid utilities and maintenance fees. Id. at 20. According to plaintiff, he made "diligent efforts to mitigate his damages" following the eviction but "was unable to re-let the Fuller Property during the remaining term of the Lease." Id.

It appears to the Court that there are genuine issues of material fact that preclude granting of summary judgment on plaintiff's § 1951.2 claim. Defendant contends that she withheld rent for July 2021 due to a gas leak on the Fuller Property and that the gas leak issue was unresolved prior to her eviction. She further contends that plaintiff was unable to re-let the Fuller Property, thereby accruing further damages, because of ongoing issues with the gas leak.[6] At oral argument, in support of these contentions, defendant pointed the Court towards the publicly available permit records for the gas leak repair on the Los Angeles Department of Building and Safety ("LADBS") website.[7]

---

[6] On February 6, 2023, defendant filed an untimely opposition to plaintiff's partial motion for summary judgment. See L.R. 7-9 (requiring that oppositions be filed not later than twenty-one days before the designated hearing date). In her opposition, defendant reiterates her argument that the gas leak excused nonpayment of rent, stating that the gas leak posed a "clear and present danger" to the premises and neighborhood, that it required work permits and replacement of 54 feet of plumbing, and that it impacted the guest house, pool, barbecue grill, and fire pit. Dkt. 97 at 2. She further states that the gas leak issue was not fully fixed until June 2022. Id.

[7] The Court takes judicial notice of these publicly available LADBS records, pursuant to Federal Rule of Evidence 201.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                              'O'

| Case No. | 2:21-cv-09682-CAS (PDx) | Date | February 13, 2023 |
|---|---|---|---|
| Title | JASON EMER V. NICOLE SPEARMAN, ET AL. | | |

These permit records state that a permit was issued on July 23, 2021, authorizing work to replace the gas pipe underground in the backyard of the Fuller Property.[8]  The records further state that the work authorized by the permit was completed on September 2, 2021. Id.

The Court finds that these records raise factual questions as to the amount of rent for which defendant may be held responsible.  While the permit records do not indicate either way whether the gas leak issue prevented plaintiff from re-letting the property, when viewed in the light most favorable to defendant, they do call into question the amount of rent she owed for the months of July 2021 through September 2021 while the gas pipe was being replaced.  Accordingly, because defendant has set out specific facts raising a factual dispute suited for determination by a jury, summary judgment on this claim would be inappropriate.  See Anderson, 477 U.S. at 250; Fed. R. Civ. P. 56(c), (e).[9]

**B.    Fraudulent Inducement Claim**

To prevail on his fraudulent inducement/promissory fraud claim, plaintiff must establish "(1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e]." Gruber v. Gruber, 48 Cal. App. 5th 529, 540 (2020).

Plaintiff contends that defendant fraudulently induced plaintiff to enter into the Lease Agreement through intentional misrepresentations and promises made in her rental

---

[8] Los Angeles Department of Building and Safety, 737 N. Fuller Ave. 90046, Permit Inspection History, https://www.ladbsservices2.lacity.org/OnlineServices/PermitReport/PcisPermitDetail?id1=21042&id2=90000&id3=14797.

[9] In his reply and at oral argument, plaintiff argued that defendant has failed to carry her burden in setting forth a habitability defense to nonpayment of rent because the gas leak occurred in the backyard and did not impact access to gas inside the house.  It appears to the Court that the question of whether the gas leak posed a safety risk or otherwise impacted the Fuller Property in a way that rendered it uninhabitable for any or all of the period before September 2, 2021, is a fact question better suited for a jury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:21-cv-09682-CAS (PDx) | Date | February 13, 2023 |
|---|---|---|---|
| Title | JASON EMER V. NICOLE SPEARMAN, ET AL. | | |

application. Dkt. 91 at 21. Specifically, plaintiff points out that defendant submitted a rental application with numerous false statements in it and fabricated proof-of-income documents. Id. at 21-22. Plaintiff additionally contends that defendant made promises to comply with the provisions in the Lease Agreement, in order to induce plaintiff's renting to defendant, and "never genuinely intended to abide by the foregoing promises and representations." Id. at 22. Instead, plaintiff argues, defendant "clearly intended to gain possession of the Fuller Property for the concealed purpose of allowing Armez Spearman and Carthell Sanders to live there." Id. at 22-23. Plaintiff argues that defendant did so to avoid Armez Spearman having to report on a rental application that he had been convicted of a felony. Id. Finally, plaintiff contends that he reasonably relied on defendant's promises and representations and suffered harm as a result because, if not for the false promises and misrepresentations, he would not have entered into the Lease Agreement with her and would have rented to someone else, who presumably would have paid the full rent over the course of the lease term. Id. at 23-24. Accordingly, plaintiff requests the same damages he seeks under the § 1951.2 claim. Id. at 24.

The Court concludes that plaintiff's fraud claim is not appropriate for decision on summary judgment for the reasons stated with respect to his § 1951.2 claim. For his fraud claim, plaintiff seeks damages in the amount of the full rent due, and, as explained above, evidence of the gas leak raises genuine factual questions as to the amount of rent owed for the period during which the gas pipe was being replaced. Moreover, based on the record, there remain genuine disputes of material fact as to the elements of plaintiff's fraud claim, including whether defendant intentionally defrauded plaintiff and whether defendant's misrepresentations were material and induced plaintiff's agreement to the transaction. Indeed, "[f]raud claims normally are so larded with fact issues (including issues of intent) that summary judgment is seldom possible." Garter-Bare Co. v. Munsingwear, Inc., 650 F.2d 975, 981 (9th Cir. 1980); see also Alliance Mortgage Co v. Rothwell, 10 Cal. 4th 1226, 1239 (1995) ("Except in the rare cases where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.").

Accordingly, because there are questions of material fact as to whether defendant fraudulently induced plaintiff to rent the Fuller Property to her and as to the appropriate damages amount, summary judgment would be improper.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-09682-CAS (PDx) | Date | February 13, 2023 |
|---|---|---|---|
| Title | JASON EMER V. NICOLE SPEARMAN, ET AL. | | |

## V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** plaintiff's partial motion for summary judgment.

IT IS SO ORDERED.

|  | 00 : 13 |
|---|---|
| Initials of Preparer | CMJ |